**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted October 18, 2017
Decided November 20, 2017

**Before**

JOEL M. FLAUM, *Circuit Judge*

KENNETH F. RIPPLE, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

No. 15-3700

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Central District of Illinois. |
| *v.* | No. 11–CR–40055–001 |
| CASEY HUNTER, *Defendant-Appellant*. | Michael M. Mihm, *Judge*. |

**O R D E R**

Casey Hunter fled from a traffic stop with a gun, and a police officer shot him when he saw Hunter turning to fire at him. After a two-day bench trial, Hunter was found guilty of possessing a firearm as a felon, *see* 18 U.S.C. § 922(g)(1), and sentenced as an armed career criminal to 260 months' imprisonment. He filed a notice of appeal, but his appointed counsel asserts that the appeal is frivolous and moves to withdraw under *Anders v. California*, 386 U.S. 738 (1967). Hunter filed a series of responses to counsel's motion. *See* CIR. R. 51(b). Because the analysis in counsel's brief is facially adequate, we limit our review to the subjects he discusses and those Hunter raises. *See United States v. Bey*, 748 F.3d 774, 776 (7th Cir. 2014). We consider Hunter's arguments, however, only to the extent we can decipher them.

First, counsel and Hunter consider whether Hunter could argue that the district judge denied Hunter his counsel of choice when he permitted Hunter's first appointed attorney to withdraw because of a conflict of interest. Before trial, the government informed Hunter's counsel, George Taseff, that it planned to call as a witness a former client of Taseff's named Darrius Martin; this prompted Taseff to move to withdraw. The judge agreed that the possibility of Taseff cross-examining his former client created a direct and irreconcilable conflict of interest and granted the motion. *See Wheat v. United States*, 486 U.S. 153, 164 (1988). But in the end Taseff's former client did not testify. Counsel correctly explains that Hunter had no right to his counsel of choice because he required a court-appointed lawyer. *See United States v. Gonzalez-Lopez*, 548 U.S. 140, 151 (2006); *United States v. Bender*, 539 F.3d 449, 454–55 (7th Cir. 2008).   Therefore, any argument premised on this right would be frivolous.

Hunter, however, insists that the conflict of interest is "suspicious," that the government never intended to call Martin, and that it listed him as a witness just to force Taseff to withdraw. Nothing in the record supports that argument. The prosecutor did not seek Martin out; he became aware of Martin as a potential witness only because Hunter wrote a letter to the judge complaining that Martin was informing on him. Further, the government represented that it had every intention of calling Martin to testify. But a witness list is not a binding contract; the government was free to cut off its presentation of evidence when it believed it had met its burden. Finally, at the hearing about Taseff's withdrawal, Hunter said he understood the circumstances and moved to continue pro se; he cannot be said to have made a timely objection to the withdrawal.

Counsel next concludes that it would be frivolous to argue that Hunter was not competent to represent himself from the time Taseff withdrew up until the second day of trial when his second appointed attorney took over representation. Despite having been advised against it, Hunter insisted on proceeding pro se– a choice that the district judge had to honor regardless of its wisdom, *see Faretta v. California*, 422 U.S. 806, 834–35 (1975). Though a district judge may override a defendant's decision to represent himself if that defendant suffers from "severe" mental illness, *see United States v. Berry*, 565 F.3d 385, 391 (7th Cir. 2009), the court found that was not the case here. True, concerns about Hunter's mental health—stemming from his apparent paranoia, his seeming inability to cease writing sometimes-incoherent letters to the judge after being ordered to stop, and what counsel believed to be odd communications with him, among other things—prompted his second appointed attorney to move for a competence hearing during and after the trial. The resulting psychological evaluation established that Hunter displayed "anxiety" and "antisocial behavior" but the court found "nothing, either alone or together, rising to the level that would constitute incompetence to stand trial." The doctor testified at the

hearing that, despite his symptoms, Hunter had an "adequate factual understanding" of legal processes and possessed the capacity and willingness to interact with counsel. The district judge also relied on his own observations of Hunter before and during trial in concluding that Hunter was both competent to stand trial and competent to represent himself, although the judge recognized the possibility that "someone might be competent to stand trial but not competent to effectively represent themselves." In *Indiana v. Edwards*, 554 U.S. 164 (2008) the Supreme Court held that the Constitution permits states to insist upon representation by counsel for those competent enough to stand trial but who still suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves. *Id.* at 178. In *Berry*, we noted that the same principle applies in federal trials, that is, a trial court may override a defendant's decision to proceed *pro se* if the defendant suffers from mental illness severe enough to render the defendant incompetent to represent himself. 565 F.3d at 392. But the district court held a hearing and concluded as a factual matter that Hunter was not severely mentally ill. Arguing that the court abused its discretion in allowing Hunter to represent himself would be frivolous because, a defendant without a diagnosed severe mental illness generally must be allowed to proceed pro se. *Berry*, 565 F.3d at 391.

Counsel finally considers if Hunter could challenge his sentence but concludes that argument would be frivolous. We agree. The judge correctly found that Hunter had at least three predicate convictions under the Armed Career Criminal Act, which meant that he was subject to a statutory-minimum sentence of 180 months' imprisonment. *See* 18 U.S.C. § 924(e)(1). The district judge then calculated a guidelines range of 324 to 405 months' imprisonment and considered the factors listed in 18 U.S.C. § 3553(a). Ultimately, the judge imposed a below-guidelines sentence of 260 months. He made no procedural errors in determining the sentence, *see United States v. Lyons*, 733 F.3d 777, 784–85 (7th Cir. 2013), and it was substantively reasonable, *see Rita v. United States*, 551 U.S. 338, 347 (2007); *United States v. Rice*, 520 F.3d 811, 821–22 (7th Cir. 2008), so any challenge to Hunter's sentence would be frivolous.

Hunter attempts to raise other potential appellate arguments in his piecemeal Rule 51(b) responses, and we do our best to understand them. First, he appears to reprise a frivolous argument from his post-trial motions that his right to a speedy trial was violated because three years (during some of which there was an interlocutory appeal in this court) elapsed between his indictment and trial. *See* 18 U.S.C. § 3161(c)(1). The district judge concluded that Hunter had waived this issue because he did not move to dismiss the indictment before trial on the grounds of a speedy-trial violation. *See id.* § 3162(a)(2) ("Failure of the defendant to move for dismissal prior to trial . . . shall constitute a waiver of the right to dismissal under this section."). Although we see that

Hunter, while represented by trial counsel, wrote letters to the judge in which he complained about delay, the judge appropriately did not consider these pro se filings because Hunter had counsel at the time. *See, e.g.*, *United States v. Patterson*, 576 F.3d 431, 436–37 (7th Cir. 2009) (explaining that district judge need not consider pro se filings by defendant represented by counsel and that "such arrangements are disfavored").

Next, Hunter says (in a filing bearing the caption of a different case, but which raises an issue that Hunter complained about in this case too) that he was denied his constitutional right of access to the courts. Hunter wishes to argue that the prisons where he was incarcerated during his criminal case did not have "adequate law libraries or adequate assistance from persons trained in the law" as required by *Bounds v. Smith*, 430 U.S. 817 (1977). *Id.* at 828. But this contention would be frivolous because the government can satisfy the requirement of giving access to the courts by affording a defendant access to legal representation; a law library per se is not required. *United States v. Byrd*, 208 F.3d 592, 593 (7th Cir. 2000). Here, Hunter had a right to appointed counsel throughout his case, and, although he did not accept it for a short period of time, a defendant who invokes his constitutional right to self-representation is not entitled to access to a law library or other legal assistance. *United States v. Sykes*, 614 F.3d 303, 311 (7th Cir. 2010); *Byrd*, 208 F.3d at 593 (explaining that "alternative rights, like access to a law library, do not spring up" when counsel is declined).

Hunter also speaks of "newly discovered evidence," another ground on which he sought a new trial. But to raise an argument in this vein would be frivolous because Hunter did not (and does not now) identify what "evidence" he discovered, and he does not explain what effect it could have in a new trial. Instead he lists newfound (but not "new") legal authority that could not warrant a new trial because it is not evidence and it could have been presented earlier. *See* FED. R. CRIM. P. 33(a); *United States v. Hagler*, 700 F.3d 1091, 1101 (7th Cir. 2012). Further, an appellate argument based on newly-discovered evidence would be frivolous because "new evidence may not be presented on appeal." *Hirmiz v. New Harrison Hotel Corp.*, 865 F.3d 475, 476 (7th Cir. 2017).

Finally, Hunter seems to say that he could argue that the state police who investigated his shooting tampered with evidence and so the government should not have introduced that evidence at trial. Hunter primarily suggests that it is impossible for the arresting officers' account to be true given the position of his gun on the ground, as represented in photographs of the scene; he also seems to argue that both the ballistics and gunpowder-residue tests were botched. But Hunter did not timely object to the evidence, either in a pretrial motion in limine or when the evidence was introduced at

trial. In any event, assessing the weight of evidence is the job of the factfinder, who is free to discredit evidence that is called into question through cross-examination or argument. The district judge, in denying Hunter's new-trial motion, admitted to being "troubled" by the way certain forensic evidence in the case had been handled but still concluded that the government had met its burden of proving Hunter possessed the gun. And the judge dismissed as specious Hunter's criticisms of the photographs presented as evidence at trial because the inconsistences Hunter highlighted were explained by the different camera angles used in documenting the scene. These are not conclusions we lightly would disrupt, and here, although Hunter restates his criticism, he does not present grounds for the extraordinary relief of a new trial. In particular, we are given no reason to suspect that the challenged evidence had a material effect on the judge's verdict. *See United States v. Saunders*, 826 F.3d 363, 368 (7th Cir. 2016). Hunter, therefore, does not propose a non-frivolous argument that he was unjustly convicted because of tainted evidence.

Accordingly, we GRANT counsel's motion to withdraw and DISMISS Hunter's appeal.